IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

DELISA L. CHUBB,

    Plaintiff,

vs.                                              CASE NO. 1:14-cv-107-MP-GRJ

CAROLYN W. COLVIN,
Acting Commissioner of Social Security

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's applications for a period of disability and disability insurance benefits pursuant to the Social Security Act. (Doc. 1.) The Commissioner has answered (Doc. 9), and both parties have filed briefs outlining their respective positions. (Docs. 16 & 17.) For the reasons discussed below, it is recommended that the Commissioner's decision be **AFFIRMED.**

## I. PROCEDURAL HISTORY

Plaintiff protectively filed an application for disability and disability insurance benefits under Title II on November 3, 2010, alleging disability beginning June 6, 1996. (R. 145-151, 204.) The application was denied initially and upon reconsideration. (R. 53-59.) Plaintiff testified at a hearing in front of an administrative law judge (ALJ) on December 12, 2011. (R. 27-51.) Following a hearing, the ALJ issued a decision unfavorable to Plaintiff on April 27, 2012. (R. 8-26.) The Appeals Council denied

Plaintiff's request for review on April 14, 2014. (R. 1-6.)  On June 13, 2014, Plaintiff filed the instant appeal to this Court.  (Doc. 1.)

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with

---

[1] *See* 42 U.S.C. § 405(g) (2000).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, he is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[11] Fourth, if a claimant's impairments do not prevent him from doing past

---

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

relevant work, he is not disabled.[12] Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of

---

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); see also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

*Case No. 1:14-cv-107-MP-GRJ*

exertion."[17] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

### III. SUMMARY OF THE RECORD

#### A. Medical History

Because Plaintiff's appeal only pertains to whether the ALJ assigned "great weight" to her ratings decision from the Department of Veterans Affairs ("the VA"), the summary of the medical evidence will focus on her ratings decision and VA treatment

---

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). See Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

[20] See id.

Page 6 of  15

records for the relevant time period between July 1, 1999 and December 31, 2001.[21]

Plaintiff underwent limited treatment with the VA for mental health issues.  On July 23, 1996, after her alleged onset date, Plaintiff completed an initial evaluation with Linda Markum, a psychiatric nurse with the VA.  She reported that she had first sought outpatient mental health treatment in 1991 and had gradually become more depressed.  In 1994, she was diagnosed with adjustment disorder and was prescribed Prozac, Paxil, and Nortriptyline.  In 1995, she was diagnosed with somatoform pain disorder and depression.  At the time of the evaluation, she took Zoloft daily and reported chronic pain.  (R. 1497-1499.)

Linda Markum referred Plaintiff for PCT outpatient treatment on July 25, 1996.  Plaintiff missed her appointments scheduled for October 15, 1996 and December 18, 1996.  She kept her appointment on May 5, 1997.  At that evaluation, she related a depressed mood, low energy, passive suicidal ideation secondary to hopelessness about physical pain, anxiety, and sleep-onset insomnia.  Dr. Lucretia Mann, Ph.D., diagnosed her with somatoform pain disorder, dysthymia, and alcohol abuse in full remission.   Dr. Mann referred her to Mary McGuigan, Ph.D., for supportive counseling.  Plaintiff missed her next two appointments at the women's clinic on April 30, 1998 and June 5, 1998.  (R. 1494-96.)

The record does not reflect any further mental health treatment until November

---

[21] Plaintiff is last insured for disability benefits on December 31, 2001. (R. 168, 204.)  She has a previously denied claim for benefits that she has not sought to reopen.  This claim was denied on July 1, 1999. (R. 205.)  Thus, Plaintiff's relevant time period for this case is from July 1, 1999 to December 31, 2001. (R. 204-05.)

of 1999.  On that date, Plainitff underwent a routine annual health examination at the VA. She completed an emotional health questionnaire in which she reported that she felt depressed 5-7 days of the week and has a "couple of days in a row when she feels sad, but her child keeps her going and active."  She stated that she has "never felt suicidal or homicidal but she does get the blues."  Her examiner, Dr. Hargadon, noted that she was alert, oriented, pleasant, and cooperative, and her conversation was appropriate.  (R. 1489-1494.)

Plaintiff presented for a new patient primary care initial evaluation in August 2001.   She reported depression and that she was currently taking Zoloft.  In a questionnaire from that visit, she stated that she was not receiving treatment from a medical health professional and did not want to receive treatment from a medical health professional.  (R. 1481-1483.)

In addition to treatment for mental health issues, Plaintiff sought treatment at the VA for various physical problems.  During her annual examination in November of 1999, her list of problems included hypothyroidism, carpal tunnel syndrome, migraines, asthma, chronic low back pain, somatoform pain disorder, obesity, and history of bright red blood per rectum.  Despite these listed ailments, Plaintiff's physical exam was normal.  She was neurologically intact, had a steady and unassisted gait, could walk heel-to-toe, had equal strength of upper and lower extremities (within a normal range), had a normal range of motion of her joints, and had no swelling, tenderness, rubor, calor, or deformity in her joints.  Her sensation was "grossly intact," her spinal alignment was within normal limits, she had no CVA tenderness, and her neck was nontender with

a normal range of motion.  Plaintiff was assessed as about 100 pounds overweight and diagnosed with hypothyroidism, for which she was prescribed Synthroid.  She had no complaints of asthma, and her lungs were clear to auscultation, her chest was symmetrical, and there was no evidence of respiratory distress.  She was directed to follow-up with a primary care provider in three months. (R. 1490-93.)

Plaintiff failed to show up for her primary appointment in May 2001. (R. 1485.) She saw a primary care provider in August 2001. (R. 1477-84.)  She reported chronic neck pain and incontinence with coughing and sneezing.  She noted a chronic cough, but denied chest pain, dizziness, or shortness of breath.  Her neck had a full range of motion, and her physical exam was normal. The examiner noted that her migraines were stable with medication and her carpal tunnel syndrome was stable. She was prescribed a steroid inhaler for asthma.  She remained about 100 pounds overweight and declined a referral to a dietician.  She was advised to increase her activity level and was transferred to the Women's Health Clinic for routine care.

Plaintiff missed her appointment at the Women's Health Clinic in September of 2001, and in December of 2001 a note in her medical records evidences that Plaintiff failed to respond to letters or messages and had missed several appointments at the VA. (R. 1476.)  Her only treatment in 2002 was for dental work. (R. 1473-75.)

B.     **Hearing Testimony**

Plaintiff's hearing was on December 12, 2011, which was about 10 years after the relevant time period for determining her disability.  At the hearing, Plaintiff testified that she had a prior claim for disability that was denied in 1998.  During the relevant

time period, Plaintiff was 32 years old. She had graduated high school and completed training to be a firefighter. In the military, she served as a damage controlman, which she explained was a shipboard firefighter who participated in chemical, biological, and radiological warfare. (R. 34-37.)

She stated that during the relevant time period, she could get around "a little bit better" than the present day and did not "have to use the walker quite as much" and did not fall as much. She testified that she had numbness in her legs. She stated that she could not go on vacation with her son because she could not keep up with him. She also testified that her son had to help out around the house - including reaching things for her, "swiffering" the floor, and carrying heavy grocery bags. She cooked easy meals, drove to doctor's appointments, and went grocery shopping. She stated that she could only walk 10 to 15 minutes without a walker before she would get short of breath and when she sat for a long period of time, her legs would go numb. (R. 39-43.)

She stated that during the relevant time period, she would get migraine headaches several times per month. She had injections administered for the headaches, which she claimed made her throw up. She was diagnosed with somatoform pain disorder by the Navy. (R. 45-46.)

**C.  The ALJ's Findings**

The ALJ found that during the relevant time period, Plaintiff had the severe impairments of obesity, hypothyroidism, somatoform pain disorder, asthma, and migraines. He found that she had no impairment or combination of impairments that met or equaled the severity of a listing. He found that she had the residual functional

capacity to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b). Though the ALJ concluded that she could not perform any past relevant work, he determined that she was not disabled because she could perform jobs that existed in significant numbers in the national economy. (R. 13-20.)

## IV.  DISCUSSION

Plaintiff contends that the ALJ improperly evaluated the VA's finding that she was entitled to individual unemployability.  While decisions of other agencies are not binding, the Commissioner must give decisions by other agencies–such as the VA–great weight.  *Bloodsworth v. Heckler,* 703 F. 2d 1233, 1241 (11th Cir. 1983); *Brady v. Heckler,* 724 F. 2d 914, 921 (11th Cir. 1984) ("Although the V.A.'s disability rating is not binding on the Secretary of Health and Human Services, it is evidence that should be given great weight.") (quoting *Olson v. Schweiker,* 663 F. 2d 593, 597 n. 4 (5th Cir. 1981)).   If an ALJ determines that a VA disability decision is not entitled to great weight, he is required to discuss his reasons for doing so.

In the VA's rating decision issued in 1998, the agency rated Plaintiff's service-connected disability as 80%: 10% for incontinence, 30% for somatoform pain disorder, 10% for migraines, 10% for hypothyroidism, 30% for carpal tunnel syndrome, right (major); 20% for carpal tunnel syndrome, left (minor), and 10% for asthma. (R. 176-198.)   Plaintiff was rated totally and permanently disabled due to her service-connected disabilities and her benefits were paid at the 100% rate.  (R. 197.)

Because there is a substantial difference between the rules and standards for disability under the VA and the SSA, it would not be appropriate for an ALJ to adopt the

findings of the VA wholesale. Among other reasons, a substantially gainful occupation under the VA rules is not the same as substantial gainful activity (SGA) under the Social Security rules. The VA uses a different standard and generally considers employment to be gainful if it is above the federal poverty threshold for one person, while under the SSA regulations, substantial work activity is work activity that involves doing significant physical or mental activities and it is the kind of work usually done for pay or profit, whether or not profit is realized, *See,* 20 C.F.R. § 405.1572. In addition, the VA's finding that a veteran is not capable of gainful employment does not equate with the SSA's finding regarding whether a claimant is capable of "other work" that exists in the national economy. And in contrast to the VA's system, the Social Security Act requires the SSA to consider whether a claimant has worked (SGA), whether the impairment(s) will last at least 12 months or result in death, and whether the claimant's RFC, age, education, and work experience affect whether the claimant can engage in other work that exists in significant numbers in the national economy. The VA, on the other hand, considers a veteran to be unemployable if she is unable to secure or get and keep a substantially gainful occupation, as a result of service-related disabilities. *See,* 38 C.F.R. § 4.16. And in contrast to the VA standards and rules, ALJ's cannot consider whether a specific job vacancy exists for a claimant or whether a claimant would be hired if she applied for work. *See,* 42 U.S.C. § 423(d)((2)(A); 20 C.F.R. § 404.1566(a).

In his decision, the ALJ appropriately considered the findings in the VA's rating decision but did not assign great weight to the legal conclusion of the VA's determination of Plaintiff's "individual unemployability": In recognizing that the VA"s

disability rating system was different from the disability decision under the Social Security Act, the ALJ wrote:

> "In reviewing the medical record, the undersigned first notes that the claimant has been granted entitlement to "individual unemployability" by the Department of Veteran Affairs (VA) effective July 27, 1998. The undersigned considers this finding, but gives no weight to the legal conclusion of "individual unemployability." This is an issue that is reserved to the Commissioner. The ratings decision from the VA explains the rules regarding VA disability benefits. The ratings decision states that a certain percentage of "disability" is assigned for specific findings related to an impairment. These percentages are then added together to determine "individual unemployability." These rules are very different from the rules under which the current claim is decided, and this determination is not given weight."

(R. 16.)(internal citations omitted).

Where, as here, an ALJ considers the VA rating in his decision but discounts the decision because the claimant had to satisfy a more stringent standard to be found disabled under the Social Security Act, courts have concluded that the ALJ has not committed error. *Pearson v. Astrue*, 271 Fed. App'x 979, 980 (11th Cir. 2008)("The record establishes that the [ALJ] considered the [VA] rating in his decision and correctly explained that a claimant had to satisfy a more stringent standard to be found disabled under the Social Security Act.") (unpublished)[22] (citing 42 U.SC. §§ 423(d)(2)(A), 1382c(a)(3)(B)). When an ALJ rejects the VA's disability rating, the ALJ should give sufficient justification for doing so in order to allow a reasoned review by the courts. *Hogard v. Sullivan*, 733 F. Supp. 1465, 1468 (M.D. Fla. 1990); *see also Kemp v. Astrue*, 308 Fed. App'x 423, 426 (11th Cir. 2009); *Pearson*, 271 Fed. App'x at 981.

---

[22] Although unpublished opinions are not binding on this Court, they are persuasive authority. 11th Cir. R. 36-2.

In this case, the ALJ did just that. The ALJ addressed the medical findings outlined in the VA ratings decision and assigned them weight as discussed below. He assessed Plaintiff's treatment with the VA for depression and somatoform pain disorder, noting that the VA's rating of 30% disability for this impairment was based on Plaintiff's psychiatric evaluation from July of 1997. The ALJ contrasted Plaintiff's allegations of pain with her minimal treatment record at the VA during the relevant time period, including Plaintiff's failure to appear for multiple appointments at the women's clinic, her normal physical examinations, and her denial of pain in her back or joints during examination. The ALJ point out that although Plaintiff reported chronic neck pain at her August 2001 examination, the results of the exam were normal and showed that Plaintiff's neck had a full range of motion. Further, although Plaintiff was referred to mental health counseling she never followed through on the referral. (R. 16-18.)

With respect to the VA's determination of 10% disability for Plaintiff's asthma, the ALJ noted that Plaintiff had no complaints of asthma at her November 1999 annual examination, and the exam evidenced no respiratory distress. The ALJ found that Plaintiff's only complaint of asthma during the relevant time period was during her examination in August 2001, when she complained of a chronic cough and was prescribed a steroid inhaler. Despite Plaintiff's complaint, her lung exam was normal. (R. 18.)

With respect to Plaintiff's hypothyroidism, the ALJ noted that Plaintiff was 100 pounds overweight and was taking Synthroid. He stated, however, that she failed to keep three separate appointments with the nutrition clinic, and although she was

prescribed a weight reduction diet, she declined a referral to a dietician. Plaintiff also denied fatigue in her treatment record, despite reporting it during the VA examination. The ALJ further found that Plaintiff alleged no particular symptoms due to her hypothyroidism and that the VA ratings decision stated that the condition was controlled with Synthroid. (R. 18-19.)

Regarding the VA's determination that Plaintiff was 10% disabled due to migraines, the ALJ stated that the VA's rating decision found Plaintiff's migraines to be "mild" and under "good control" with medication. Finally, the ALJ noted Plaintiff's diagnoses of carpal tunnel syndrome and chronic low back pain. He acknowledged that while the VA ratings decision evidenced that she had reported numbness, the treatment record showed that she denied parethesias or pain in her fingers and had no manipulative limitations. The ALLJ also noted that Plaintiff's sensation was normal. (R. 19.)

The ALJ's decision is replete with references to the VA ratings decision and the VA treatment records for Plaintiff's impairments for which she received disability. The ALJ acknowledged that she was taking medications for her impairments but contrasted Plaintiff's allegations of pain with the minimal treatment record, Plaintiff's frequent failure to appear for appointments, her lack of specialized treatment, the relative scarcity of complaints of pain and symptoms, and her refusal to see a dietician or mental health professional. The ALJ also noted that during the relevant time period, Plaintiff was a single mother home-schooling her 8 year old son, which suggested a greater functional ability than Plaintiff alleged.

In sum, the ALJ thoroughly considered and discussed the disabling impairments identified by the VA in determining Plaintiff's RFC and in concluding that Plaintiff's functional limitations did not render her disabled under the SSA.

Accordingly, for these reasons, the Court concludes that the ALJ did not err in evaluating the VA's ratings decision and did not err in determining the weight he assigned to the VA's ratings decision.

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED**.

**IN CHAMBERS** in Gainesville, Florida, on the 17th day of April 2015.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**